☑ Original ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) <br> *(Briefly describe the property to be searched* <br> *or identify the person by name and address)* ) <br> Records and information associated with five ) <br> (5) cellular devices in the custody/control of ) <br> AT&T & Verizon (See Attachments) ) | Case No.23-819M(NJ) <br><br> **Matter No.: 2022R00325** |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A; over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 1/23/2023 _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Nancy Joseph _____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial) and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 1/9/2023 @ 5:57 p.m. _____

_____
*Judge's signature*

City and state: Milwaukee, WI _____ Hon. Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1.  Records and information associated with the following cellular devices assigned call numbers (referred to herein and in Attachment B as the "Target Cell Phones"):

   a.  **(470) 756-1501**, **Target Cell Phone 1,** that is in the custody or control of AT&T Wireless, a wireless telephone service provider headquartered in North Palm Beach, Florida.

   b.  **(480) 823-3716**, **Target Cell Phone 2,** whose service provider is AT&T, a wireless telephone service provider headquartered in North Palm Beach, Florida.

   c.  **(414) 336-1740, Target Cell Phone 3,** that is in the custody or control of Verizon Wireless, a wireless telephone service provider headquartered in Bedminster, NJ.

   d.  **(480) 826-4077, Target Cell Phone 4,** that is in the custody or control of Verizon Wireless, a wireless telephone service provider headquartered in Bedminster, NJ.

   e.  **(602) 727-7292, Target Cell Phone 5,** whose service provided is AT&T, a wireless telephone service provider headquartered in North Palm Beach, Florida.

2.  The Target Cell Phones.

**ATTACHMENT B**

**Particular Things to be Seized**

**I.      Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.      The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phones for the time period January 1, 2020, to the present:

   i.      Names (including subscriber names, usernames, and screen names);

   ii.      Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.      Local and long-distance telephone connection records;

   iv.      Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.      Length of service (including start date) and types of service utilized;

   vi.      Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phones for the time period January 1, 2020 to the present including:

a.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

b.  information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received) as well as per-call measurement data (also known as "real-time tool" or "RTT")].

b.  Information associated with each communication to and from the Target Cell Phones for a period of 30 days from the date of this warrant, including:

i.  Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

2

ii.     Source and destination telephone numbers;

iii.    Date, time, and duration of communication; and

iv.     All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phones will connect at the beginning and end of each communication as well as per-call measurement data (also known as "real-time tool" or "RTT").

c.    Information about the location of the Target Cell Phones for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i.     To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of Target Cell Phone #2 on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

3

ii.     This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to be Seized by the Government

All information described above in Section I that will assist in the investigation of **Andrew MOSBY, Elijah HENRY, Shenicqua BILLINGS-TROUPE, Joseph MOSBY, Latiere MOSBY** and others regarding violations of Title 18, United States Code, Sections 371 (conspiracy); 922(a)(6) (false statement during a purchase of a firearm); 922(a)(1)(A) (engaging in firearms business without a federal firearm license); 924(a)(1)(A) (false statement during a purchase of a firearm); 924(n) (interstate travel to buy firearms to deal without a federal firearm license); and 1001 (false statements or representations to an agency of the United States) between January 1, 2020 and the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in these Warrants.

4

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | Case No.23-819M(NJ) |
| *or identify the person by name and address)* ) | |
| Records and information associated with five (5) ) | **Matter No.: 2022R00325** |
| cellular devices in the custody/control of AT&T & ) | |
| Verizon (See Attachments) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A; over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 371; 922(a)(6); and 924(a)(1)(A) | Possession or sale of firearms; Evidence of straw purchasing firearms and illegal firearms trafficking; |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Sean A. Carlson, ATF
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone
_____ *(specify reliable electronic means)*.

Date: 1/9/2023

_____
*Judge's signature*

City and state: Milwaukee, WI

Hon. Nancy Joseph, U.S. Magistrate Judge
_____
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# APPLICATIONS FOR SEARCH WARRANTS

I, Sean Carlson, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for search warrant extensions under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephones assigned call numbers as follows (collectively, the Target Cell Phones):

  a.      **(470) 756-1501**, **Target Cell Phone 1,** whose service provided is AT&T, a wireless telephone service provider headquartered in North Palm Beach, Florida.

  a.      **(480) 823-3716, Target Cell Phone 2,** whose service provider is AT&T, a wireless telephone service provider headquartered in North Palm Beach, Florida.

  b.      **(414) 336-1740, Target Cell Phone 3,** whose service provider is Verizon Wireless, a wireless telephone service provider headquartered in Bedminster, NJ.

  c.      **(480) 826-4077, Target Cell Phone 4,** whose service provider is Verizon Wireless, a wireless telephone service provider headquartered in Bedminster, NJ.

  d.      **(602) 727-7292, Target Cell Phone 5,** whose service provided is AT&T, a wireless telephone service provider headquartered in North Palm Beach, Florida.

The Target Cell Phones are described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 371 (conspiracy); 922(a)(6) (false statement

during a purchase of a firearm); 922(a)(1)(A) (engaging in firearms business without a federal firearm license); 924(a)(1)(A) (false statement during a purchase of a firearm); 924(n) (interstate travel to buy firearms to deal without a federal firearm license); and 1001 (false statements or representations to an agency of the United States) have been committed, are being committed, or will be committed by **Andrew MOSBY, Elijah HENRY, Shenicqua BILLINGS-TROUPE, Joseph MOSBY**, **Latiere MOSBY** and others (collectively the Target Subjects), including, but not limited to the user of cellular phone number **(470) 756-1501 (Andrew MOSBY)**, and the user of cellular phone number **(480) 823-3716 (Elijah HENRY)**, the user of cellular phone number **(414) 336-1740 (Shenicqua BILLINGS-TROUPE)**, the user of cellular phone number **(480) 826-4077 (Joseph MOSBY),** the user of cellular phone number **(602) 727-7292 (Latiere MOSBY)** and other known and unknown coconspirators.

3. The Court has jurisdiction to issue the proposed warrants because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

4. Because these warrants seek the prospective collection of information, including cell-site location information, that may fall with the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrants therefore include all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

5. I am employed as a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") assigned to the Milwaukee Field

2

Office since November 2015. I have been employed as a full-time law enforcement officer for approximately fifteen years. Prior to my employment at ATF, I was a Patrol Officer at the Hammond Police Department in Hammond, Indiana for over four (4) years, and then I served approximately five (5) years as a Federal Air Marshal with the U.S. Department of Homeland Security.

6.      As a Special Agent, I have participated in the investigation of firearms and narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, and weapons. As a firearms investigator, I have interviewed many individuals involved in firearm and drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of firearms and controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances.

7.      Based on my training, experience and participation in drug trafficking and firearms trafficking investigations, I know and have observed the following:

8.      I have relied on informants to investigate firearms trafficking and drug trafficking. Through informant interviews and debriefings of individuals involved in those offenses, I have learned about the manner in which individuals and organizations finance, purchase, transport, and distribute firearms and narcotics both within and outside of Wisconsin. I have utilized informants to conduct "controlled purchases" of firearms and controlled substances from individuals, as opposed to licensed gun dealers. I have also conducted surveillance of individuals engaged in firearms and drug trafficking and participated in the execution of numerous search warrants resulting in the seizure of drugs, firearms, ammunition, and magazines.

3

9.     Based on my training and experience, I have become familiar with the language utilized over the telephone to discuss firearms and drug trafficking and know that the language is often limited, guarded, and coded. I also know that firearms and drug traffickers often use electronic devices (such as computers and cellular phones) and social media to facilitate these crimes. Based on my experience, I know that firearms traffickers may keep photographs of these items on electronic devices.

10.     I also know that drug traffickers and firearms traffickers commonly possess—on their person, at their residences, at their places of business, in their vehicles, and other locations where they exercise dominion and control—firearms, ammunition, and records or receipts pertaining to such.

11.     I know that firearms traffickers and drug traffickers often put their telephones in nominee names to distance themselves from telephones that are utilized to facilitate these and related offenses. I also know that firearm and drug traffickers often use proceeds to purchase assets such as vehicles, property, jewelry, and narcotics. I also know that firearm and drug traffickers often use nominees to purchase or title these assets to avoid scrutiny from law enforcement.

12.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## **PROBABLE CAUSE**

13.     In 2022, ATF agents became aware of a firearms trafficking scheme involving the movement of .50 caliber rifles, belt-fed rifles, and other firearms from various states to Arizona for resale. Based on the investigation, Joseph MOSBY, aka "Joe," coordinates a network of straw

4

buyers in Arizona, Wisconsin, North Carolina, Georgia, and Virginia. Typically, the guns are purchased outside of Arizona and moved to Arizona to resell for profit. Although Joseph MOSBY's permanent residence is unknown, based on the investigation, agents know he travels frequently to Wisconsin, Georgia, North Carolina, and Virginia to purchase guns. Elijah Mohamed HENRY and Latiere MOSBY, aka "Tiece," are members of the conspiracy who reside in Arizona. Shenicqua BILLINGS-TROUPE, aka "Shenicqua Troupe," resides predominantly in Wisconsin, but as explained below, obtained 7529 W. Saint Kateri Drive, Laveen, Arizona in May 2022. Between June 2022 and September 2022, members of this conspiracy successfully purchased at least 16 firearms and attempted to purchase at least seven firearms. The total cost of the firearms successfully purchased was at least $152,197.91.

14.     As explained below, BILLINGS-TROUPE obtained 7529 W. Saint Kateri Drive, Laveen, Arizona in May 2022. BILLINGS-TROUPE has traveled from Arizona to Wisconsin to purchase firearms, including instances when she traveled with Joseph MOSBY. Moreover, BILLINGS-TROUPE, Joseph MOSBY, and others have used credit cards in her name and "Major Quality Care," which is a company registered to her, to purchase firearms.

15.     There are two primary Armslist accounts[1] associated with this group: "Bobbylue" and "Elijah414". These Armslist accounts are used to advertise guns for sale. Subpoenaed information shows that Latiere MOSBY at 7056 W. Alicia Drive, Laveen, telephone (602) 727-7292 ("Latiere Mosby telephone 1", **Target Cell Phone 5**), and email address Luebobby@yahoo.com is the registrant of the Armslist account "Bobbylue". Subpoenaed

---

[1] Armslist is a website that advertises firearms, firearms accessories, outdoor equipment, other firearm-related materials for sale.

information also shows that HENRY at 7056 W. Alicia Drive, Laveen, Arizona, telephone (480) 823-3716 (Henry telephone 1, **Target Cell Phone 2**), and email address of elijahhenry45@icloud.com is the registrant of the Armslist account "Elijah414". A credit card in the name of "Gemela Henry" at 7056 W. Alicia Drive, Laveen, Arizona is used to pay the subscription for Armlist account "Elijah414".

### Firearm Purchase 1 in Wisconsin – June 10 to June 16, 2022

16.     On June 10, 2022, historical cellular telephone records for Joseph Mosby telephone 1 and Billings-Troupe telephone 1 (**Target Cell Phone 3**) show the two telephones were in the area of Professional Firearm Services in Fond Du Lac, Wisconsin. On June 10, 2022, BILLINGS-TROUPE completed an ATF Form 4473 for an FN M249S belt-fed rifle (5.56 caliber, bearing serial no. M249SA02246) at Professional Firearm Services.     BILLINGS-TROUPE paid $11,077.50 for the rifle. The owner of the FFL stated a male who identified himself as "Joe MOSBY" was with BILLINGS-TROUPE, and he expressed interest in belt-fed conversion kits for AR style rifles. Joseph MOSBY provided Joseph Mosby telephone1 as his contact number. Agents showed the owner a photograph of Joseph MOSBY, and he positively identified him as being with BILLINGS-TROUPE.   On June 10, 2022, cell telephone data for Joseph Mosby telephone 1 show contact with Henry telephone 1 **(Target Cell Phone 2)** and Latiere Mosby telephone 1 **(Target Cell Phone 5)**.

17.     On June 14, 2022, BILLINGS-TROUPE returned to the store and took possession of the above rifle.  Following this purchase, cell telephone data for Joseph telephone 1 and Billings-Troupe telephone 1 (**Target Cell Phone 3**) show both devices leave the Wisconsin area and travel towards Phoenix.  Toll records for Joseph Mosby telephone 1 show contacts with Henry telephone 1 **(Target Cell Phone 2)** and Latiere Mosby telephone 1 **(Target Cell Phone 5)** multiple times

6

between June 14 and June 17, 2022, as the telephones are moving from Wisconsin to Arizona. On June 17, 2022, cell telephone data for Joseph Mosby telephone 1 and Billings-Troupe telephone1 show both devices in the Phoenix area.

18.     Agents reviewed an Armslist posting in which "Elijah414" was selling an FN M249S rifle in Phoenix for $22,000 on June 16, 2022. Below are screenshots of Elijah414's Armslist listing depicting an FN M249S rifle, and a screenshot of an identical photograph located in the Apple iCloud data for elijahhenry45@icloud.com, which was obtained via federal search warrant and lists HENRY as the subscriber. Metadata embedded in the photograph found in elijahhenry45@icloud.com revealed the photograph was dated June 10, 2022 and was taken in close proximity to Professional Firearm Services in Fond du Lac, WI. However, cellular location data for Henry phone 1 indicates the telephone was in Arizona on June 10, 2022.



*Screenshot of the Armslist posting on June 16, 2022 advertising an FN M249S for sale by "Elijah414"*



*Image taken on June 10, 2022, in WI depicting an FN M249 rifle and case from elijahhenry45@icloud.com*

19.　　Also on June 16, 2022, "Elijah414's" Armslist account received a message from a user asking if he would consider "20k for the FN" (likely referring to the FN M249S rifle). "Elijah414" provided the number for Henry telephone 1 **(Target Cell Phone 2)** to the potential buyer.　On that same date, the listing is terminated leading investigators to believe the rifle may have been sold.　The day before, on June 15, 2022, "Elijah414" Armslist account received a message from a user inquiring about trading a Glock 34 pistol for an AR rifle. "Elijah414" expressed interest in the trade and provided the number for Latiere Mosby telephone 1 **(Target Cell Phone 5)** as the contact number.

### Firearm Purchase 2 in Georgia – June 17 to June 19, 2022

20.　　On June 17, 2022, cellular data for Joseph Mosby telephone 1 and Billings-Troupe telephone1 show the telephones left Phoenix and arrived in the area of Harry Reid Int. Airport, Las Vegas, Nevada.　At 11 pm EST that night, cellular data for Joseph Mosby telephone 1 show the telephone in the area of Hartsfield-Jackson Int. Airport, Atlanta, GA. On June 18, 2022,

8

Billings-Troupe telephone1 was in the Milwaukee area. I am aware this rapid movement is consistent with air travel.

21. On June 18, 2022, Joseph MOSBY completed an ATF Form 4473 and purchased an FN M249S belt-fed rifle (5.56 caliber, bearing serial no. M249SA06780) from Grove Pawn and Gun in Locust Grove, GA. In box 22, Joseph MOSBY affixed his signature attesting to the fact that all information he provided on the form was true, correct, and complete. Joseph MOSBY paid $10,799.99 in cash. Cell telephone data show Joseph Mosby telephone 1 had contact with Henry telephone 1 **(Target Cell Phone 2)** and Latiere Mosby telephone 1 on June 18, 2022.

22. The next day, on June 19, 2022, cellular records for Joseph Mosby telephone 1 show the telephone leaving Atlanta, GA and traveling to Dulles Airport in Dulles, VA, then Norfolk, VA where it remains for a few hours. Then the device travels from Norfolk, VA, to Atlanta, GA, then Las Vegas, Nevada in a rapid manner consistent with air travel. Cellular location data next indicates the telephone arrived in the Phoenix area at approximately 2:45 am on June 20, 2022.

## Firearm Purchases 3, 4, 5, and 6 in Wisconsin – June 29 to July 22, 2022

23. On June 29, 2022, historical location data for Joseph Mosby telephone 1 show the telephone in Marathon City, WI, the location of FFL Zingers and Flingers. Cell phone data for Joseph Mosby telephone 1 shows contact with Latiere Mosby telephone 1 **(Target Cell Phone 5)** on June 29, 2022. Employees of Zingers and Flingers said that on June 29, 2022, Sharise Laquitta BLUNT came into the FFL with a person who identified himself as "Joseph Mosby." BLUNT provided a State of Wisconsin driver's license and completed the ATF Form 4473 for an FN model M249S, 5.56 caliber belt-fed rifle, bearing serial no. M249SA02391. BLUNT affixed her signature in box 22 attesting to the fact that all information she provided on the form was true,

9

correct, and complete. The background check returned a "delayed" response.[2]    BLUNT paid

cash for the full amount of the rifle and 10 mm ammunition, totaling $10,209.23.

24.    On June 30, 2022, cell phone data for Joseph Mosby telephone 1 show contacts

with Henry telephone 1 **(Target Cell Phone 2)** and Latiere Mosby telephone 1 **(Target Cell Phone**

**5)**.  BLUNT and Joseph MOSBY returned to the above FFL on this date for BLUNT to take

possession of the rifle.  Also on this day, BLUNT completed a second ATF Form 4473 for an FN

model M249S, 5.56 caliber belt-fed rifle, bearing serial no. M249SA07868.  BLUNT stated her

address was "3449 N. 2nd Street" in Milwaukee, WI and she provided (262) 573-4051 as her phone

number ("Blunt telephone 1").  Blunt telephone 1 is subscribed to by BLUNT.  At the end of the

form, in box 22, BLUNT affixed her signature attesting to the fact that all information she provided

on the form was true, correct, and complete.  For this second rifle, BLUNT provided $5,700 in

cash, and she charged $1,000 to a credit card bearing the name "Joseph Mosby".  BLUNT charged

the remaining balance, $3,427.99 to a different credit card also bearing the name "Joseph D.

Mosby".  The total paid for the second rifle was $10,127.99.

25.    While Joseph MOSBY was in the FFL with BLUNT on June 30, 2022, he

completed an ATF Form 4473 for a Barrett model 82, .50 BMG caliber rifle, bearing serial no.

AA014237.  While completing this transaction, Joseph MOSBY provided a Georgia driver

license's that listed his address as "4705 Bald Eagle Way" in Douglasville, GA.  Based on tenant

records obtained via Grand Jury Subpoena, agents believe that Joseph MOSBY did not reside at

this address.  Joseph Mosby also provided (980) 880-3373 as his telephone number.  This number

---

[2] A delayed NICS response means a FFL cannot legally transfer a firearm until the delay is changed to a proceed
status, or three business days have passed.

is a digit off from the number for Joseph Mosby telephone 1. Joseph MOSBY affixed his signature in box 22 of the 4473 attesting to the fact that all information he provided on the form was true, correct, and complete. Joseph MOSBY paid a deposit using a one credit card bearing the name "Shenicqua Billings" and one credit card bearing the name "Major Quality Care." Wisconsin Department of Financial institution records show that "Major Quality Care, LLC," founded in 2017, is registered to "Shenicqua Billings" at 3431 N. 13th Street, Milwaukee, WI. Employees of the FFL did not observe BILLINGS-TROUPE at this transaction, but cellular location data for Billings-Troupe telephone 1 **(Target Cell Phone 3)** show that telephone was pinging off cell towers that cover Zingers and Flingers in Marathon City, WI while this transaction was occurring.

26.     Joseph MOSBY returned to Zingers and Flingers on July 1, 2022, and paid the remaining balance for the Barrett rifle in three transactions using two cards bearing his name and one card bearing the name "Major Quality Care," which is BILLINGS-TROUPE's business. In total, Joseph MOSBY paid $10,021.44 for the rifle.

27.     Also on this date, bank records for the account belonging to Joseph MOSBY, obtained via Grand Jury subpoena, show a purchase with American Airlines consistent with airfare. Cellular location data for Billings-Troupe telephone 1 **(Target Cell Phone 3)** and Joseph Mosby telephone 1 on July 3, 2022, show the telephones in the area of Milwaukee, WI, and then Phoenix, AZ, which is consistent with air travel.

28.     Continuing on July 3, 2022, Billings-Troupe's Facebook account shows the following photograph depicting a Barrett .50 BMG caliber rifle and two FN M249S rifles, which are the type of firearms purchased in Zingers and Flingers in Wisconsin a few days earlier. The BILLINGS-TROUPE Facebook account also shows the following photograph displaying what appears to be .50BMG ammunition loaded into Barrett magazine.

11



*Photographs depicting a Barrett .50 caliber rifle and two belt fed rifles and ammunition*

29.     On July 4, 2022, BILLINGS-TROUPE posted four Facebook videos which depicted her and an individual who looks like Joseph MOSBY shooting a Barrett .50 BMG caliber rifle and two M249S belt-fed rifles in the desert.  As mentioned above, these are consistent with the models purchased by Joseph MOSBY and BLUNT in Wisconsin.  On that same date, Gila River Police Department (GRPD) cited Joseph MOSBY for trespassing on an Indian reservation outside of Phoenix.  Review of the officer's body camera footage revealed Joseph MOSBY, BILLINGS-TROUPE, HENRY, and Latiere MOSBY in a white Nissan Titan pickup. The vehicle was registered to EAN Holdings which I know to be a rental vehicle belonging to Enterprise Rent-A-Car.  During his contact with Joseph MOSBY, GRPD located and verified the serial numbers of the below listed firearms that were in the vehicle:

- Barrett M82A1 rifle (bearing serial number AA014237); sold to Joseph MOSBY on July 1, 2022, in Wisconsin;
- FN M249S rifle (bearing serial number M249SA02391); sold to BLUNT on June 30, 2022, in Wisconsin;
- FN M249S rifle (bearing serial number M249SA07868); sold to BLUNT on June 30, 2022, in Wisconsin;
- Glock model 19X pistol (bearing serial number BWZH058); sold to HENRY on June 26, 2022 in Arizona;
- Glock model 45 pistol (bearing serial number BUET821); sold to Kirby A. Beaver on November 27, 2021; and
- Glock model 19 pistol (bearing serial number BURE481); sold to Abigail M. Cole on October 30, 2021.

12

30. Joseph MOSBY stated to GRPD he was the owner of all the firearms, and he purchased the M249S rifles in Wisconsin for investment purposes. He explained he paid $12,000 for each rifle. Joseph MOSBY provided the number for Joseph Mosby telephone 1 as his telephone and stated he resided in Georgia. GRPD did not encounter BLUNT. Historical location data for Blunt telephone 1 show that the telephone was in Wisconsin at the time of this incident in Gila River.

31. Between July 11, 2022, and July 14, 2022, six ATM deposits were made into an account belonging to Joseph MOSBY at ATM machines in the Phoenix area totaling $4,000. Cellular records for Joseph Mosby telephone 1 indicate Joseph MOSBY was in the Phoenix area on the dates these deposits were made.

32. On July 12, 2022, tracking information for Joseph Mosby telephone 1 show it was in Phoenix. On that same day, BLUNT returned to FFL Zingers and Flingers in Marathon City, WI, and completed ATF Form 4473 for a Barrett, model 107A1, .50 BMG caliber rifle, bearing serial no. AE008151. BLUNT affixed her signature in Box 22 of the 4473 attesting to the fact that all information she provided on the form was true, correct, and complete. BLUNT paid the deposit in two transactions; one in cash and the second using a credit card bearing the name "Major Quality Care," which is registered to BILLINGS-TROUPE. Cellular location data for Billings-Troupe telephone1 show the telephone "pinging" on a cellular tower covering Zingers and Flingers at the time of the transaction.

33. Four days later, on July 16, 2022, BLUNT and a female who identified herself as BILLINGS-TROUPE returned to FFL Zingers and Flingers. BLUNT paid the remaining balance in two transactions: one in cash and one using the credit card "Major Quality Care" (business account of BILLINGS-TROUPE). The total paid for the Barrett rifle was $13,364.52. While in

13

the FFL with BLUNT, BILLINGS-TROUPE provided a state of Wisconsin driver license's and filled out an ATF Form 4473 to purchase a Kriss model Vector, .45 caliber pistol bearing serial no. 45P017434. BILLINGS-TROUPE listed "3431 N. 13th Street" in Milwaukee, WI on the ATF Form 4473 and the number for Billings-Troupe telephone 1 **(Target Cell Phone 3)** for the store profile. At the end of the 4473, in box 22, BILLINGS-TROUPE affixed her signature attesting to the fact that all information she provided on the form was true, correct, and complete. BILLINGS-TROUPE paid a deposit in two transactions: one in cash, and one using the credit card bearing the name "Major Quality Care". As of the date of this affidavit, BILLINGS-TROUPE has not returned to take possession of the firearm.

34.     On July 19, 2022, a teller deposit in an unknown location, totaling $5,000 was made into the Chase bank account belonging to Joseph MOSBY. Telephone tracking information for Joseph Mosby telephone 1 show it was in Wisconsin. On July 20, 2022, a card linked to the account belonging to Joseph MOSBY conducted a purchase at a BP gas station in Wisconsin.

35.     On July 21, 2022, cellular location data for Joseph Mosby telephone 1 show the phone was in Wisconsin. Joseph MOSBY's bank account shows numerous financial transactions at gas stations along the highway on the direct route to the Laveen, Arizona area from Wisconsin starting around July 21, 2022. The activity is consistent with someone driving from Wisconsin to Arizona. Cellular location data for Joseph Mosby telephone 1 show it near 7529 W. Saint Kateri Drive, Laveen, Arizona and 7056 W. Alicia Drive, Laveen, Arizona on July 22, 2022.

36.     On July 21, 2022, while Joseph MOSBY was driving to Arizona, the Armslist account "Elijah414" created a listing which advertised a "50 bmg" for sale for $23,000 dollars. Based on my training and experience, the term "50 bmg" is likely referring to the caliber of ammunition ".50 BMG" which is found on the Barrett rifle. The image accompanying the listing

14

depicted a tan colored Barrett model M107A1 that was photographed inside a hard-sided plastic

case on commercial style carpet flooring consistent with the flooring at FFL Zingers and Flingers,

in WI.  As mentioned above, BLUNT purchased a Barrett, model 107A1, .50 BMG for $13,364.52

on July 16, 2022, at Zingers and Flingers.



*Screenshot of listing posted by "Elijah414" on July 21, 2022*

37.     On the same date, the Armslist account "Elijah414" received messages from a user

inquiring about and negotiating a price for the "bmg (Barrett)". The user of "Elijah414" said he

would sell the rifle for $18,000.  Also on July 21, 2022, another Armslist user messages

"Elijah414" and asks why they are selling a "107" (referring to a Barrett M107A1 rifle) for "$24K"

when they typically sell for "11K Brand new".  The user of "Elijah414" does not respond.

15

38.     On July 22, 2022, the user of "Elijah414" began exchanging messages with a user who was inquiring about the price of a firearm.[3]  "Elijah414" responded $25,000. The user remarked that the most they had seen for this type of firearm was $18,000.  There was no further communication between "Elijah414" and this user.

### Firearm Purchases 7 and 8 in Wisconsin – July 19 to July 29, 2022

39.     Cellular records for **(470) 756-1501**, a telephone subscribed to Andrew MOSBY[4] ("Andrew Mosby telephone 1", **Target Cell Phone 1**), show communications with FFL Shell Shock Armory LLC in Somerset, WI on July 19, 2022.  Also on this date, Cashapp records for username $Drewbandz96, which, based on subpoenaed information, is registered to Andrew MOSBY, show a $2,500.00 payment from "Gemela Shabazz" from IP address 67.40.93.135. This IP address 67.40.93.135 is associated with the Armslist accounts "Luebobby" and "Elijah414". As mentioned above, Armslist account "Luebobby" is subscribed to by Latiere MOSBY.  A credit card in the name of "Gemela Henry" with the address of 7056 W. Alicia Drive, Laveen, Arizona is used to pay the subscription for Armlist account "Elijah414".

40.     On that same date, July 19, 2022, location data for Henry telephone 1 **(Target Cell Phone 2)** and Andrew Mosby telephone 1 (**Target Cell Phone 1**) show both telephones traveling together from Milwaukee, WI to Somerset, WI.  Also on this day, cell phone data for Joseph Mosby telephone 1 show contacts with Henry telephone 1 **(Target Cell Phone 2)** and Latiere Mosby telephone 1 **(Target Cell Phone 5)**.

---

[3] It is unclear what type of firearm they are referring to in the messages.

[4] Andrew MOSBY provided this telephone number to an FFL.

16

41.     Continuing on July 19, 2022, Andrew MOSBY and HENRY went to FFL Shell Shock Armory in Somerset, WI.  Andrew MOSBY completed an ATF Form 4473 for the transfer of a SMGCO model RPD, 7.62 caliber rifle bearing serial number MB182 and a DS Arms model RPD, 7.62 caliber rifle bearing serial number RPDS013608.  Andrew MOSBY affixed his signature in box 22 of the 4473 attesting to the fact that all information he provided on the form was true, correct, and complete.  The purchase price for the two firearms was $13,927.50.  Agents observed HENRY on surveillance footage with Andrew MOSBY during the completion of the background check, which resulted in a delayed response.

42.     Four days later, on July 23, 2022, BMO Harris bank records for the account belonging to Andrew MOSBY show a deposit of $11,260, via teller in Goodyear, Arizona. I reviewed the bank surveillance footage of the transaction, which show that Joseph MOSBY made the deposit.  Two days later, on July 25, 2022, $3,100 was deposited via teller by an unknown individual at a BMO Harris Bank branch in Goodyear, Arizona, into the bank account belonging to Andrew MOSBY.  Also, on July 25, 2022, cell telephone data for Joseph Mosby telephone 1 show communications with Henry telephone 1 **(Target Cell Phone 2)** and Latiere Mosby telephone 1 **(Target Cell Phone 5)**.

43.      Continuing on July 25, 2022, Andrew MOSBY returned to Shell Shock Armory in Wisconsin and took possession of the two firearms.  Location data for Henry telephone 1 **(Target Cell Phone 2)** show it was in Arizona on July 25, 2022.

44.     Andrew MOSBY paid $13,927.50 for the rifles in two transactions:  one a Cashapp purchase (username $Drewbandz96) for $3,240, the remaining $10,687.50 was paid in cash.  Cashapp records for username $Drewbandz96, also show Andrew MOSBY received a $300.00 payment from "Elijah" on July 25, 2022.  Between July 19 and July 25, 2022, records show that

17

Andrew MOSBY received about $17,160 in total from the two Arizona deposits and the two Cashapp payments from "Gemela Shabazz" and "Elijah".[5]

45.    On July 28, 2022, the Armslist account "Elijah414" listed a black colored "Rpd" for sale for $17,000 and a "Rpd" with wood finish grips also for $17,000.  The images in both listings appear to be taken in the same location.  In the photograph for the black RPD rifle, a portion of the photographer's outfit was captured in the image.  The image revealed the photographer was wearing light grey sweatpants and slip-on shoes.  This is consistent in appearance with Andrew MOSBY's clothing in surveillance footage captured at Shell Shock Armory in Wisconsin on July 25, 2022.



*Screenshots of two Armslist RPD listings posted by "Elijah414" on July 28, 2022*

---

[5] A review of Andrew MOSBY's Department of Workforce Development employment history show that he received less than $20,000 in wages between 2017 and June 2022. Furthermore, Andrew MOSBY received less than $6,000 in wages in the last 3.5 years.



*Screenshot from July 25, 2022 RPD purchase by Andrew MOSBY in Wisconsin*

46.     On July 29, 2022, Armslist account "Elijah414" received a message from Armslist user "Chory," stating "I interesate are boyh available". "Elijah414" responded "Yeah". "Chory" replied, "nice can we meet tomorrow I be available tomorrow", then added, "5204818521 yansel Martinez by name and number texne tomorrow tha way we can figurate the time and everything". There is no listing associated with this conversation, but based on timing, I believe this conversation may be related to the RPD firearms listed on July 28, 2022.[6]

---

[6] There were two other contacts with Armslist user "Chory". On June 15, 2022, "Chory" contacted "Bobbylue" and stated, "I interesate 520/5433045 my number text please if you have available". Yanssel Rubio MARTINEZ, aka "Chory," is the subscriber of (520) 543-3045 ("Martinez telephone 1"). Then on August 22, 2022, Armslist username "Chory" again messaged "Bobbylue", "I'm intered how much you want for it. "Bobbylue" responded, "16k". Based on my training and experience, I believe that MARTINEZ messaged "Bobbylue" to express interest in a firearm that "Bobbylue" was selling for $16,000 on Armslist.

19

**Firearm Purchase 9 in Virginia – July 25 to August 1, 2022**

47.     On July 25, 2022, BMO Harris financial records for the account belonging to Joseph MOSBY show a $2,560 withdrawal, a purchase from Frontier Airlines, and a gas purchase in Kingman, Arizona.  Later, there is a purchase at a Burger King located in Orlando, FL, and finally a purchase at a Dollar Tree in Norfolk, VA. These transactions lead investigators to conclude Joseph MOSBY was traveling from Arizona to Virginia via air travel.

48.     On July 26, 2022, cellular location data for Joseph Mosby telephone 1 show the telephone was near Fredricksburg, VA, the location of FFL Liberty Pawn and Gold, 616 Stoney Creek Drive.  On this date, Joseph MOSBY completed an ATF Form 4473 for a Barrett model 82A1, .50 BMG caliber rifle, bearing serial no. AA013817, which he purchased for $8,999.99. The FFL stated Joseph MOSBY provided a Georgia driver's license and asserted on the ATF Form 4473 that he resided at "6140 Cooper Street" in Douglasville, GA, which was a different address than the address he provided on June 30, 2022, at FFL Zingers and Flingers in Wisconsin.   At the end of the form, in box 22, Joseph MOSBY affixed his signature attesting to the fact that all information he provided on the form was true, correct, and complete. Agents later determined, through leasing records obtained via grand jury subpoena, Joseph MOSBY did not reside at this address at the time of this purchase. Call records for Joseph Mosby telephone 1 show an approximately four-minute call with Henry telephone 1 **(Target Cell Phone 2)** at approximately 6:01 pm EST.  According to the timestamp on the receipt, the purchase at FFL Liberty Pawn and Gold was completed at 6:24 pm EST.

49.     On July 27, 2022, the bank account belonging to Joseph MOSBY show a charge from Double Tree Hotel in Norfolk, VA, and a purchase consistent with airfare from American

Airlines.  On this date, the account also shows purchases with AirBnB and Harbor Freight in Richmond, VA.

50.      On July 29, 2022, the Armslist account "Elijah414 messaged an Armslist user about an unknown firearm which the user was selling and asked if he would need anything besides cash to complete the transaction, and he tells the user he has a state of Arizona ID.  The user responded, "We just need to meet at a gun shop so we can do a legit FFL transfer to you.  Are you in Virginia?" Elijah414 answered, "Yes Im currently in Virgina will I be able to complete the process with my Arizona id".   The user responded, "I think you could as long as you can provide an AZ address for the paperwork", then added, "You can do it with the AZ ID, but youll need a secondary document showing the same address as the AZ ID.  Like a bank statement, lease, bank check, utility bill, almost anything."  "Elijah414" concludes the conversation by asking the user for his phone number, then the user responds "sure" and sends a telephone number.  Cellular location data for Henry telephone 1 **(Target Cell Phone 2)** indicates this telephone was in Arizona on July 29, 2022. I believe the user of "Elijah414" was attempting to find firearms in Virginia that were available for immediate purchase while Joseph MOSBY was in Virginia.  It should be noted only rifles can be transferred to out of state residents at a FFL.

51.      On August 1, 2022, agents located a transaction for the account belonging to Joseph MOSBY at Barros Pizza in Laveen, Arizona. Tracking information Joseph Mosby telephone 1 show it pinging off cellular towers that cover 7529 W. Saint Kateri Drive, Laveen, Arizona and 7056 W. Alicia Drive, Laveen, Arizona.  I believe Joseph MOSBY was in Arizona on August 1, 2022.

**Attempted Purchases of a Firearms in Wisconsin – August 2 to August 8, 2022**

52.    On August 2, 2022, Joseph MOSBY deposited $11,260, via teller, into Andrew MOSBY's BMO Harris account, at a branch located in Goodyear, Arizona.

53.    On August 4, 2022, Andrew MOSBY went to FFL Zingers and Flingers in Wisconsin, and completed the ATF Form 4473 for an Ohio Ordinance model M2 SLR, .50 caliber belt-fed rifle, bearing serial no. 850224 and received a delayed response. Andrew MOSBY affixed his signature in box 22 of the 4473 attesting to the fact that all information he provided on the form was true, correct, and complete. Andrew MOSBY stated he lived at "6744 N. Sidney Place, Unit 106" in Glendale, WI, and provided the number for Andrew Mosby telephone 1 (**Target Cell Phone 1**). Investigators are aware, through tenant records obtained via grand jury subpoena, that Andrew MOSBY did not reside at that address on August 4, 2022. Andrew MOSBY has not returned pay for the rifle which Andrew MOSBY stated he intended to pay in cash. The cost of the rifle was $19,000.

54.    On August 6, 2022, telephone records for Andrew Mosby telephone 1(**Target Cell Phone 1)** show a call to Henry telephone 1 **(Target Cell Phone 2)** and to FFL Select Fire Weaponry, located in Waukesha, WI.

55.    On August 8, 2022, at approximately 1:45 pm CST, Andrew MOSBY went to FFL Select Fire Weaponry, completed an ATF Form 4473, and attempted to complete a Gunbroker.com[7] transaction for a belt fed FN M249 rifle (5.56 caliber, bearing serial no. M249SA02553). Andrew MOSBY declared on the form in response to the question 10, that he resided at "6744 N. Sidney Place" in Glendale, Wisconsin 53209. Andrew MOSBY provided a

---

[7] GunBroker.com is an auction website specializing in the sale of firearms and related items.

22

Wisconsin identification card, which listed his address as 6744 N. Sidney Place, Unit 106 in Glendale, Wisconsin 53209. At the end of the form, in box 22, Andrew MOSBY affixed his signature attesting to the fact that all information he provided on the form was true, correct, and complete.

56.     While conducting the transaction, Andrew MOSBY stated to the employee he intended to pay in cash and he would have to go to three BMO Harris ATMs to collect the funds. The employee notified Andrew MOSBY that they required a non-refundable cash deposit before conducting the background check.  The employee also overheard Andrew MOSBY call someone to explain the FFL was requiring a deposit and asking for permission to pay the cash deposit.  At 1:48 pm CST, call records for Andrew Mosby telephone 1 (**Target Cell Phone 1**) show a two minute and seventeen second call to Henry telephone 1 **(Target Cell Phone 2)**. At 2:42 pm CST, telephone records show a three minute and thirty-eight second call from Henry telephone 1 **(Target Cell Phone 2)** to Andrew Mosby telephone 1 (**Target Cell Phone 1**). Andrew MOSBY received a NICS "delayed" response and the firearm was subsequently never transferred to him.

57.     On August 9, 2022, the property manager at the Glen Hills Apartment, stated Andrew MOSBY has never resided at 6744 N. Sidney Place, Unit 106, or any other unit in the building and she did not recognize him from a photograph.  The current tenant of unit 106, who moved in on August 1, 2022, stated they did not know Andrew MOSBY and he does not reside with them in unit 106.  The tenant also did not recognize Andrew MOSBY when shown a photograph.

### Firearm Purchases 10 And 11 in Arizona – August 2 to August 14, 2022

58.     On August 2, 2022, HENRY purchased an FN model M249S 5.56 caliber belt-fed rifle from FFL J&G Sales Ltd. In 440 Miller Valley Road, Prescott, Arizona.  According to the

23

sales receipt, HENRY found the firearm advertised on the website Gunbroker.com and he selected in-store pickup.  Elijah HENRY listed his address on the order and ATF Form 4473 as "7056 W. Alicia Drive" in Laveen, Arizona, and paid $9,936.53 for the rifle. At the end of the form, in box 22, Elijah HENRY affixed his signature attesting to the fact that all information he provided on the form was true, correct, and complete.  Cell phone data for Joseph Mosby telephone 1 show communications with Latiere Mosby telephone 1 **(Target Cell Phone 5)** on August 2, 2022.

59.     On August 11, 2022, cell phone data for Joseph Mosby telephone 1 show communications with Henry telephone 1 **(Target Cell Phone 2)** and Latiere Mosby telephone 1 **(Target Cell Phone 5)**.  Also on this day, HENRY completed an ATF Form 4473 for and took possession of Browning, model M1919, .308 caliber rifle bearing serial no. 2402 from FFL On Target Enterprises in Kingman, Arizona, for approximately $6,486.  At the end of the form, in box 22, Elijah HENRY affixed his signature attesting to the fact that all information he provided on the form was true, correct, and complete.

60.     Three days later, on August 14, 2022, the Armslist account "Elijah414" created a listing that advertised a "Browning M1919" for sale for $14,000.  The image accompanying the listing depicted a belt-fed rifle mounted on a tripod next to an open garage door.



*Screenshot of listing posted by "Elijah414" on August 14, 2022*

61.     Continuing on August 14, 2022, the Armslist account "Bobbylue" (Latiere MOSBY) created a listing which advertised a "Browning 1919" for sale or trade and solicited interested parties to contact him.  The listing also communicated he was interested in trading for belt-fed firearms.  The image accompanying the listing depicted what appeared to be a Browning 1919 belt-fed rifle mounted on a tripod.



*Screenshot of listing posted by "Bobbylue" on August 14, 2022*

62. In another message received on August 14, 2022, an Armslist user messaged Armslist account "Bobbylue" about the Browning rifle listing and offered to trade. The users discussed trade value and "Bobbylue" stated he needed at least $15,000 in value in return.

**Billings-Troupe Deposits $10,800 into Joseph Mosby's Account – August 16, 2022**

63. On August 16, 2022, BILLINGS-TROUPE deposited $10,800 into the BMO Harris account belonging to Joseph MOSBY. BILLINGS-TROUPE provided identification to the teller when she made the deposit. This account was the same BMO Harris account from which Joseph MOSBY transferred money to Andrew MOSBY's account on August 2, 2022. BILLINGS-TROUPE made the deposit at a BMO Harris branch in Goodyear, Arizona.

**Martinez's Encounters With Law Enforcement – August 18 to October 8, 2022**

64. On August 18, 2022, MARTINEZ was stopped at the port of entry in Nogales, Arizona, as he and another individual were exiting the United States to enter Mexico. Inside their

26

vehicle, Customs and Border Patrol (CBP) recovered rifles. The passenger took responsibility for the firearms and MARTINEZ was not arrested. Then on September 8, 2022, Mexican authorities seized 32 firearms, 4,536 magazines, and 3,045 rounds of ammunition in Nogales, Sonora, Mexico. During an interview with ATF, one of the original purchasers of one of the firearms recovered in Mexico said that the firearm was sold to an individual using the number for Martinez telephone 1. On October 8, 2022, MARTINEZ was again stopped at the port of entry in Nogales, Arizona, as he was exiting the United States. CBP recovered three AK style rifles, one RPD belt-fed rifle, an RPD drum magazine, three AK style magazines, and one RPD parts kit. MARTINEZ was arrested and is pending trial. MARTINEZ has admitted he is part of group who smuggles weapons into Mexico from the United States. A consent search of Martinez telephone 1 show numerous screenshots of Armlists postings for Barrett .50 caliber rifles. Telephone records for Martinez telephone 1 show that between February 23, 2022, and May 8, 2022, Henry telephone 1, **(Target Cell Phone 2)** and Martinez telephone 1 had 388 contacts and Henry telephone 1 **(Target Cell Phone 2)** was the second most frequent contact. After May 8, 2022, there were no further contacts between the two telephones. To date, none of the firearms linked to MARTINEZ have traced back to Joseph MOSBY, Latiere MOSBY, HENRY, or BILLINGS-TROUPE.

### Firearm Purchases 12 And 13 in Georgia – September 9 to September 11, 2022

65.     On September 9, 2022, cell phone data for Joseph Mosby telephone 1 show communications with Henry telephone 1 **(Target Cell Phone 2)** and Latiere Mosby telephone 1 **(Target Cell Phone 5)**. Also on this day, cellular location data for Joseph Mosby telephone 1 show the telephone in the immediate area of 7529 W. Saint Kateri Drive, Laveen, Arizona and 7056 W. Alicia Drive, Laveen, Arizona, before moving to Sky Harbor Airport, Phoenix, AZ.

27

Joseph Mosby telephone 1 was next located in Hartsfield-Jackson Int. Airport, Atlanta, GA, then a short time later in Savannah, GA. This movement is consistent with air travel.

66.    On that same date, September 9, 2022, Joseph Mosby telephone 1 then traveled to the area of SPI Guns FFL in Hinesville, GA in a time consistent with driving. Once at SPI Guns, Joseph MOSBY completed an ATF Form 4473 for a Barrett model 82A1, .50 caliber rifle, bearing serial number AA012840 and asserted he lived at "6140 Cooper Street, Apt. 13" in Douglasville, GA, which was different than the addresses he previously provided to FFLs to purchase firearms. Joseph MOSBY paid $9,719.22, in cash and took possession of the rifle. The Apple iCloud data for the account elijahhenry45@icloud.com contained a screenshot of the google.com listing for SPI Guns in Hinesville, GA with the address and telephone number visible, dated August 15, 2022.

67.    Following this transaction, location data for Joseph Mosby telephone 1 show it at FFL McWhorter Custom Rifles in Doerun, Georgia. Once there, Joseph MOSBY completed an ATF Form 4473 for a Barrett model 82A1 rifle, .50 BMG caliber rifle bearing serial number 4179, asserting on the form he lived at "6140 Cooper Street, Apt. 13" in Douglasville, GA, which was the same address he provided to FFL SPI Guns in Hinesville, Georgia. Joseph MOSBY paid $8,996.40 and took possession of rifle that day. The Apple iCloud search warrant data for the account elijahhenry45@icloud.com contained a screenshot of the google.com listing for McWhorter Custom Rifles in Doerun, GA with the address and phone number visible, dated August 15, 2022.

68.    Following the second transaction on September 9, 2022, location data for Joseph Mosby telephone 1 show it moving from Hartsfield-Jackson Int. Airport, Atlanta, GA, with a layover in Los Angeles, CA, and ending in Phoenix. The device traveled directly to the area of

28

7529 W. Saint Kateri Drive, Laveen, Arizona and 7056 W. Alicia Drive, Laveen, Arizona after leaving the airport.

69.     On September 10, 2022, the Armslist account "Elijah414" created a listing in which he advertised a "Barrett 50 BMG" for sale with an unspecified price. The image accompanying the listing depicted two Barrett rifles on top of a kitchen counter that looks like the kitchen at 7529 W. Saint Kateri Drive, Laveen, Arizona.



*Screenshot of listing posted by "Elijah414" on September 10, 2022*

70.     On September 11, 2022, an Armslist user messaged the account "Elijah414" to inquire about a Barrett rifle for sale. On that same date, another Armslist user messaged "Elijah414" and showed interest in the "50s", likely referring to .50 caliber rifles. On September 12, 2022, an Armslist user messaged "Elijah414" and asked, "How much you asking", and

29

"Elijah414 does not respond. On the same date another user messaged, "Hey about how much are you looking to get for one barrett?" and "Elijah414" does not respond.

## Firearm Purchases 14, 15, and 16 in NC – September 16 to September 22, 2022

71.     Toll analysis for Henry telephone 1 **(Target Cell Phone 2)** show a call to FFL Fuquay Gun and Gold in Fuquay, NC on September 16, 2022.   On September 16, 2022, William G. ROBINSON IV completed an ATF Form 4473 for an FN M249S belt-fed rifle (model M249S, 5.56 caliber rifle, bearing serial no. M249SA05895) and took possession of the firearm from FFL Fuquay Gun and Gold.  ROBINSON asserted he resided at "205 E. 1st Street" in Lexington, NC, which agents know to be false because ROBINSON later admitted he lived elsewhere in an interview with agents.  Agents confirmed that he did not reside at this address through leasing records, obtained via grand jury subpoena, ROBINSON lives at 10 Jamaica Drive, Lexington, NC.

72.     At the end of the form, in box 22, ROBINSON affixed his signature attesting to the fact that all information he provided on the form was true, correct, and complete.  In-store surveillance footage from this transaction show Joseph MOSBY present during ROBINSON's purchase and is observed opening a backpack and pulling out a large stack of cash and paying for the firearm.  The receipt indicates $10,186.74 was paid in cash for the rifle.

73.     Toll analysis for Henry telephone 1 **(Target Cell Phone 2)** show a call to FFL Wild Indian Gun Company ("Wild Indian") in Goldsboro, NC, on September 16, 2022.  On September 19, 2022, ROBINSON completed an ATF Form 4473 for a Barrett rifle (model M82A1, .50 BMG caliber, bearing serial no. AA014419) and took possession of the firearm at FFL Wild Indian Gun Company. ROBINSON paid $8,999 for the rifle, which was paid in cash. On the ATF Form 4473, ROBINSON again stated he resided at "205 E. 1st Street" in Lexington, NC, and provided his phone number as "(743) 236-1208" on the purchase paperwork. At the end of the form, in box 22,

30

ROBINSON affixed his signature attesting to the fact that all information he provided on the form was true, correct, and complete.

74.     Toll analysis for Henry telephone 1 **(Target Cell Phone 2)** revealed a call to FFL First Light Guns located at 111 S. Caswell Street, La Grange, NC, on the morning of September 22, 2022.   The owner of First Light Guns stated that on September 22, 2022, Precious Inez CRENSHAW completed an ATF Form 4473, purchased and took possession of an FN M249 rifle (model M249, 5.56 caliber, bearing serial no. M249SA05719). CRENSHAW paid $9,345.79 for the rifle.   On the form, CRENSHAW asserted she resided at "2013 Cedar Fork Drive" in Greensboro, NC. At the end of the form, in box 22, CRENSHAW affixed her signature attesting to the fact that all information she provided on the form was true, correct, and complete. Agents determined through leasing documents that CRENSHAW did not reside at this address when making this purchase.

75.     As explained further below, pursuant to a search warrant, investigators searched telephone (336) 628-1344 used by Shakila Dontae MOORE ("Moore telephone 1"), who admitted to purchasing a firearm for Joseph MOSBY.   Investigators identified a text conversation between MOORE and Joseph MOSBY that occurred on September 21, 2022, in which he tells MOORE he is going to send her money and directs her to send it to telephone number (704) 315-0126, which is subscribed to by CRENSHAW.   MOORE replies, "It's sent."   Investigators also located a Facebook account, username "Precious Mariposa Crenshaw," which prominently displays photographs of CRENSHAW, who is Facebook friends with the Facebook account username "Joe Mosby."   The account "Joe Mosby" has photographs of Joseph MOSBY prominently displayed leading investigators to believe he is the owner of the account.

31

76.     On October 17, 2022, a Grand Jury Subpoena was served to Ronald Greene at 921 Logandale Court, Greensboro, NC. Paul Greene Sr. is the listed owner of 2013 Cedar Fork Drive, Greensboro, NC, which is the address CRENSHAW declared as her residence on the ATF Form 4473 during her rifle purchase on September 22, 2022. Ronald Greene stated his father is in poor health but explained Ronald Greene is employed with the company to perform maintenance on the property. Ronald Greene stated CRENSHAW is the daughter of the lease holder, Celestine Crenshaw. Greene stated CRENSHAW has not resided at the property for "some time," and stated Celestine Crenshaw was the current tenant.

**Attempted Purchases of Firearms in Georgia – September 14 to September 28, 2022**

77.     On September 14, 2022, Frontier Airlines records show Joseph MOSBY and Michelle ROBESON flew from Phoenix, AZ to Charlotte, NC. That same day, the manager of SPI Guns in Georgia, where Joseph MOSBY had previously purchased a Barrett on September 9, 2022, stated Joseph MOSBY called the FFL, using Joseph Mosby telephone 1, and asked to purchase another Barrett rifle. Joseph MOSBY told the employee his friend was going to purchase the rifle.

78.     On September 15, 2022, the employee had further text communications with the user of Joseph Mosby telephone 1and the user of the phone stated "Andrew" or "Andrew's wife" would come and purchase the Barrett rifle.

79.     On September 16, 2022, the employee had further text communications with the user of Joseph Mosby telephone 1 to discuss the sale of the Barrett. The user of the telephone stated his friend would pay approximately $12,000 cash for the rifle and his friend's wife would come to the store. Ultimately, SPI denied the sale due to concerns that Joseph MOSBY was involved in straw purchasing.

32

80.    On September 24, 2022, cell phone data for Joseph Mosby telephone 1 show communications with Latiere Mosby telephone 1 **(Target Cell Phone 5)**.  Also on this day, the manager of SPI Guns in Georgia stated he was again contacted about firearms by Joseph MOSBY, who was using Joseph Mosby telephone 1.

81.    On that same day, September 24, 2022, according to the manager, Joseph MOSBY and MOORE came to the SPI Guns inquiring about a Barrett rifle, as well as a FN model M249, 5.56 cal. belt-fed rifle bearing serial number M2493AO7957. While in the FFL, Joseph MOSBY, provided a Georgia driver's license, and completed an ATF Form 4473, to buy the FN M249 rifle. Joseph MOSBY declared on the form that he resides at "6140 Cooper Street, Apt. B" in Douglasville, GA, which was the address he previously provided.   While in the FFL with Joseph MOSBY, MOORE provided a Georgia driver's license, and completed an ATF Form 4473 for a Charter Arms revolver (model The Lavender Lady, caliber .38sp, bearing serial no. 21L22853) and a Barrett rifle (model M107A1, .50 caliber, bearing serial no. AE009541).  MOORE provided a Georgia driver's license and declared on the ATF Form 4473 that she lives at "2046 Rector Drive SW" in Atlanta, GA.  MOORE also provided the number for Moore telephone 1. At the end of the form, in box 22, MOORE affixed her signature attesting to the fact that all information she provided on the form was true, correct, and complete.  Agents have determined through grand jury subpoena information that MOORE did not reside at the Rector Drive address at the time she completed the ATF Form 4473, and she in fact resided at 10 Jamaica Drive, Lexington, NC.

### Search and Interview of Joseph MOSBY – September 28, 2022

82.    Four days later, on September 28, 2022, Joseph MOSBY returned to SPI Guns in Hinesville, Georgia where agents were waiting to interview him and execute a federal search warrant for Joseph MOSBY's person and vehicle. Joseph MOSBY arrived, as the sole occupant,

33

in a white Chevrolet Equinox (bearing California license plate 8WKY267).  Cell phone data for Joseph Mosby telephone 1 show a contact with Latiere Mosby telephone 1 **(Target Cell Phone 5)** lasting more than two hours on September 28, 2022, while Joseph Mosby telephone 1 traveled to Hinesville, GA.

83.     During his post-*Miranda* interview, Joseph MOSBY stated he currently resides at 6140 Cooper Street, Apt. B in Douglasville, GA 30134, which is the address he has previously listed on several ATF Form 4473's during the purchase of firearms.  Joseph MOSBY stated he has resided there for several years, and stated he lives with his brother "Ronald ROBESON," whom he said was the leaseholder.  Joseph MOSBY stated he drove from that address today and it took him approximately 90 minutes to get to SPI guns. Location data for Joseph Mosby telephone 1 show it was in Winston Salem, NC before it traveled directly to the FFL in Hinesville, GA.

84.     Joseph MOSBY stated the Barrett rifle he previously purchased from SPI Guns on September 9, 2022, was the first Barrett rifle he has purchased. Joseph MOSBY also stated the FN M249S belt-fed rifle for which he filled out the ATF Form 4473 on September 24, 2022, was going to be the first firearm of this type he has owned. Joseph MOSBY also said that he was purchasing the firearms for his collection.

85.     As mentioned above, Joseph MOSBY purchased a Barrett .50 caliber rifle from Zingers and Flingers in Wisconsin, on June 30, 2022.  Additionally, during the above-referenced police contact, Joseph MOSBY had with Gila River PD (GLPD) on July 4, 2022, Joseph MOSBY told GLPD that he was the owner of a Barrett rifle and the two M249S rifles which were in his possession and examined by the officer.  The two M249s rifles were purchased by BLUNT in Wisconsin.

34

86.     During the search of Joseph MOSBY's person, I located $12,312 in United States currency, which MOSBY stated was going to be used to finalize the purchase of the FN M249S rifle and a state of Georgia Driver license listing the address "6140 Cooper Street, Apt. B" In Douglasville, GA.  During the search of Joseph MOSBY's vehicle, investigators located the following items: Apple iPhone (bearing IMEI 353763868701190) in a translucent plastic case; and a laminated FN M249 document which contained instructions to assemble the firearm. As agents collected Joseph MOSBY's telephone, the screen lit up and revealed a missed call from a contact named "Elijah Henry" via the application WhatsApp.  Immediately following the execution of the search warrants, agents observed Joseph MOSBY drive directly to the area of a Holiday Inn Express in Hinesville, GA, at which point agents terminated surveillance.

87.     On that same day, September 28, 2022, while agents were conducting an interview and search warrant on Joseph MOSBY, location data for Henry telephone 1 **(Target Cell Phone 2)** show the telephone traveling from Phoenix, AZ, to Savannah, GA, with a brief layover in Atlanta, GA. Henry telephone 1 **(Target Cell Phone 2)** began pinging in Savannah, GA at approximately 5:31 pm EST.  At approximately 5:40 pm EST, Joseph MOSBY departed FFL SPI Guns. At approximately 6:31 pm PST, tracking information for Henry telephone 1 **(Target Cell Phone 2)** show it traveling from the Savannah Airport and to the area of the Holiday Inn Express in Hinesville, GA, where agents followed Joseph MOSBY after the search warrant. Approximately 15 minutes later, tracking information for Henry telephone 1 **(Target Cell Phone 2)** show it left the area of the Holiday Inn and began moving westbound from Savannah, GA. Agents continued to monitor the movements of the phone as it traveled westbound, in a manner consistent with driving, across the country, routing through El Paso, Texas, and arriving in Laveen, Arizona on October 1, 2022.

35

88.     Agents later reviewed cellular phone data for the cellular phone seized from Joseph MOSBY, which was Joseph MOSBY telephone 1, on September 28, 2022 at HSI guns, pursuant to the federal search warrant.  Joseph MOSBY had the following WhatsApp conversation with the contact "Elijah Henry" in which "Elijah Henry" discusses buying an airline ticket on September 28, 2022.



89.     On that same date, contact "Elijah Henry" sent the following message to Joseph Mosby:



90. On that same date, "Elijah Henry" sent Joseph MOSBY the following message stating they are in Atlanta, and a follow up message saying they are there for an hour. Location data for Henry telephone 1 **(Target Cell Phone 2)** confirmed the device was in Atlanta, GA at the time this message was sent.



**Call to FFL in Wisconsin – September 24, 2022**

91. Four days before Joseph MOSBY was interviewed and searched, on September 24, 2022, an employee at the FFL Select Fire Weaponry LLC in Waukesha, Wisconsin stated a woman called the FFL to inquire about "50 BMGs", referring to .50 caliber BMG rifles. The employee stated during the call they heard a male voice in the background coaching her on what to say. The call came from Billings-Troupe telephone 1 **(Target Cell Phone 3)**. The manager further explained that a short time later an individual who identified as "Elijah Henry" called about Barrett .50 caliber rifles, 240 Bravo rifles, and FN M249S rifles for sale. The individual provided telephone (262) 442-0140 and asked the store to call him if they got in any of those specific firearms. A search of law enforcement databases revealed the phone number (262) 442-0140 is

37

associated with "Gemela F. Brown" with an associated residence of "7056 W. Alicia Drive, Laveen, Arizona." As explained above, a "Gemela Shabazz" and "Gemela Henry" has been linked to 7056 W. Alicia Drive, Laveen, Arizona. The device belonging to HENRY was pinging in Arizona the at the time this phone call was placed. On that same date, the device belonging to BILLINGS-TROUPE was pinging in the Milwaukee, Wisconsin area.

### Search and Interview of MOORE And ROBINSON in NC – October 19, 2022

92. On October 19, 2022, personnel from ATF and the Lexington Police Department executed federal search warrants for the persons of MOORE and ROBINSON and the premises of 10 Jamaica Drive, Lexington, NC.

93. Following the search warrant, ROBINSON stated that he purchased three rifles for Joseph MOSBY, and he tried to buy two additional FN M249S rifles. ROBINSON explained he has known Joseph MOSBY for many years. He and MOORE used to live with Joseph MOSBY and his ex-wife Michelle ROBESON at 4705 Bald Eagle Way in Douglasville, GA. Joseph MOSBY came to ROBINSON's home and offered to pay ROBINSON to purchase firearms for him. Joseph MOSBY told ROBINSON the firearms were being stored at his home in Arizona. Joseph MOSBY explained to ROBINSON these style of rifles (i.e. .50 caliber and belt-fed) were valuable and could be sold for significant profit. Joseph MOSBY accompanied ROBINSON on all the purchases. ROBINSON purchased all the firearms in North Carolina, and Joseph MOSBY paid him $4,000 total in cash for purchasing the firearms. ROBINSON stated he believed Joseph MOSBY located all the firearms they purchased on Gunbroker.com, and Joseph MOSBY paid for all the rifles ROBINSON purchased with cash.

94. ROBINSON stated Joseph MOSBY might be involving his two nephews whom he knew by their nicknames "Tiece" and "Fresh" in the straw purchasing scheme. He thought both

38

resided in Milwaukee, WI. ROBINSON stated when he was in the car with Joseph MOSBY driving to the FFLs, he overheard Joseph MOSBY talking to "Tiece" on the phone. ROBINSON stated "Tiece" was telling Joseph MOSBY of FFLs that were selling the type of rifles they were looking for, and "Tiece" seemed to be directing Joseph MOSBY. Agents asked ROBINSON about the name "Andrew," which was a name Joseph MOSBY referred to in a text message to SPI Guns. ROBINSON stated he knew "Andrew" by the nickname "Fresh". Based on this information, I believe that Andrew MOSBY goes by the nickname "Fresh" and is Joseph MOSBY's nephew. ROBINSON also said that Joseph MOSBY said that "Tiece" was looking to acquire Glock 19 or Glock 23 pistols, which he intended to trade for "Ghost guns[8].

95.     Investigators identified a public Facebook profile with the user ID "Tiece Mosby" which contained photographs of Latiere MOSBY. Additionally on July 31, 2021, a Facebook user posted a message to this account wishing "Tiece" a happy birthday. I am aware that Latiere MOSBY's birthday is July 31. Based on the above information, I believe that Latiere MOSBY goes by the nickname "Tiece" and is Joseph's MOSBY's nephew.

96.     ROBINSON stated on a trip to one FFL, MOORE, ROBINSON, and their two small children stayed with Joseph MOSBY, Michelle ROBESON and their family at an AirBNB rental property, and ROBESON was aware the purpose of the trip was for ROBINSON to complete firearms purchases for Joseph MOSBY.

97.     Agents asked ROBINSON how Joseph MOSBY recruited MOORE to purchase the rifle from SPI Guns in Savannah, GA, on September 24, 2022. ROBINSON stated Joseph MOSBY needed to take MOORE because the FFL would not accept an out of state ID for the

---

[8] The term "Ghost guns" refers to privately manufactured firearms that do not contain traceable serial numbers.

purchase. ROBINSON stated MOORE still had a Georgia driver's license from when they resided at an old address, "2046 Rector Drive SW" in Atlanta, GA. ROBINSON did not know how much MOORE was paid but stated Joseph MOSBY still paid her even though the FFL declined to transfer her the rifle.

98.     Agents interviewed MOORE who stated Joseph MOSBY recruited her to buy rifles because he knew she had an old Georgia driver's license from when she resided at 2046 Rector Drive SW in Atlanta. MOORE stated she has not resided there for several years, explaining that in 2021 she and ROBINSON were living in their vehicle before moving to 10 Jamaica Drive, Lexington, NC. MOORE stated she successfully purchased one rifle for Joseph MOSBY in addition to the denial she received at SPI Guns, in Hinesville, Georgia, but she could not remember the type of rifle. MOORE stated the purchase occurred in North Carolina approximately one month prior to the date of this interview (on or about September 17, 2022). MOORE stated her and ROBINSON were struggling financially, so she was easily convinced to buy the firearms for Joseph MOSBY in exchange for money. MOORE stated she was paid approximately $500 dollars up front for the rifles, then Joseph MOSBY paid her "a couple thousand" once he sold the firearm. MOORE explained Joseph MOSBY found the rifles to purchase from Gunbroker.com.

99.     MOORE also explained during one of the times in which she or ROBINSON purchased firearms for Joseph MOSBY, her and her family stayed at an AirBNB rental property with, Joseph MOSBY, Michelle ROBESON, and their children.

100.     MOORE stated a few days prior to the date of this interview, Michelle ROBESON called her and told her Joseph MOSBY lost his phone, and ROBESON directed her "not to send any gun stuff to Joe's phone". This timeline corresponds with agents seizing Joseph Mosby

40

telephone 1 on September 28, 2022. MOORE also explained ROBESON currently lives in Arizona.

101. MOORE also stated in her interview with agents that she had recently received Joseph MOSBY's new phone number. Agents also determined during their analysis of MOORE's phone, on October 19, 2022, MOORE deleted Joseph MOSBY telephone 1 for the contact name "Joe (emoji)" and replaced it with **(480) 826-4077 ("Joseph MOSBY telephone 2", Target Cell Phone 4).** Agents have subsequently determined, via search warrant, Joseph MOSBY is the subscriber on this account.

**Seizure of Henry Telephone 1, and Service of Warning Notices – December 8, 2022**

102. On December 9, 2022, ATF Phoenix agents encountered HENRY in Avondale, Arizona. Pursuant to a federal warrant, agents seized Henry telephone 1 **(Target Cell Phone 2)**. ATF agents also served HENRY with "Warning Notice of Unlicensed Dealing in Violation of Federal Law" and a "Warning Notice of Straw Purchasing". HENRY refused to sign the warning notices without an attorney present but was compliant with law enforcement personnel.

103. ATF Phoenix continued to monitor pings associated with Henry telephone 1 **(Target Cell Phone 2)** over the next several days and determined Elijah HENRY had likely ported Henry telephone 1 **(Target Cell Phone 2)** to a new device. On numerous occasions, following the seizure of Henry telephone 1 **(Target Cell Phone 2)** on December 9, 2022, your affiant has observed Elijah HENRY arrive and leave 7529 W. Saint Kateri Drive, Laveen, Arizona and 7056 W. Alicia Drive, Laveen, AZ at times that correspond with the ping location data for Henry telephone 1 **(Target Cell Phone 2),** leading your affiant to conclude that Elijah HENRY continues to use Henry telephone 1 **(Target Cell Phone 2).**

41

104. I am aware the image of the firearm for sale depicts a kitchen with similar style/color cabinets, countertops and flooring as the Zillow listing photographs for 7056 W. Alicia Drive, Laveen, Arizona.

105. ATF has also previously observed HENRY driving a white Chevrolet Malibu sedan.

106. I conducted electronic surveillance at 7056 W. Alicia Drive, Laveen, Arizona and observed Elijah HENRY a coming and going from 7056 W. Alicia Drive, Laveen, Arizona on the following dates and times:

- On December 14, 2022, at 3:55 pm MST, I observed HENRY exit 7056 W. Alicia Drive, Laveen, Arizona and briefly gets into a White Chevrolet Malibu which was parked in the driveway. A short time later he exits the vehicle and talks to a person who appears to be Latiere MOSBY who is working on the engine of a black sedan also parked in the driveway. Both went back into 7056 W. Alicia Drive, Laveen, Arizona a short time later.

- On December 15, 2022, at 1:15 pm MST, I observed HENRY exit 7056 W. Alicia Drive, Laveen, Arizona and get into a White Chevrolet Malibu which was parked in the driveway. A short time later Elijah HENRY exits the vehicle and goes back into 7056 W. Alicia Drive, Laveen, Arizona.

- On December 16, 2022, at 2:31 pm MST, I observed a White Chevrolet Malibu drive and park in the driveway of 7056 W. Alicia Drive, Laveen, Arizona. A short time later, I observed HENRY exit the driver's seat of the vehicle and walk into 7056 W. Alicia Drive, Laveen, Arizona.

- On December 18, 2022, at 1:58 pm MST, I observed a White Chevrolet Malibu

42

drive and park in the driveway of 7056 W. Alicia Drive, Laveen, Arizona. A short time later I saw HENRY exit the driver's seat of the vehicle and let a dog out of the rear passenger seat. HENRY then went back to the driver's area of the vehicle and reached inside, and the garage door the 7056 W. Alicia Drive, Laveen, Arizona opened. A short time later HENRY went into the residence.

- On December 19, 2022, at 8:36 am MST, I observed a white Chevrolet Malibu drive and park in the driveway of 7056 W. Alicia Drive, Laveen, Arizona. Approximately five minutes later, I observed HENRY exit the driver's seat of the vehicle and walk into the residence.

**Cell-Site Data**

107.    In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

108.    Based on my training and experience, I know that Service Providers can collect cell-site data on a prospective basis about the Target Cell Phones. Based on my training and

43

experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Providers typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

109.    Based on my training and experience, I know that the Service Providers can collect per-call measurement data, which the Service Providers also refer to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

110.    Based on my training and experience, I know that Verizon also can collect per-call measurement data, which Verizon also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

### E-911 Phase II / GPS Location Data

111.    I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the

44

cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Providers can collect E-911 Phase II data about the location of the Target Cell Phones, including by initiating a signal to determine the location of the Target Cell Phones on the Service Providers' network or with such other reference points as may be reasonably available.

## Pen-Trap Data

112. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

45

## Subscriber Information

113. Based on my training and experience, I know that wireless providers such as the Service Providers typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Providers typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phones' user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

114. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

115. I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

116. I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may

46

be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

117.    I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phones would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

118.    Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

47

## ATTACHMENT A

### Property to Be Searched

1.     Records and information associated with the following cellular devices assigned call numbers (referred to herein and in Attachment B as the "Target Cell Phones"):

        a.     **(470) 756-1501**, **Target Cell Phone 1,** that is in the custody or control of AT&T Wireless, a wireless telephone service provider headquartered in North Palm Beach, Florida.

        b.     **(480) 823-3716**, **Target Cell Phone 2,** whose service provider is AT&T, a wireless telephone service provider headquartered in North Palm Beach, Florida.

        c.     **(414) 336-1740, Target Cell Phone 3,** that is in the custody or control of Verizon Wireless, a wireless telephone service provider headquartered in Bedminster, NJ.

        d.     **(480) 826-4077, Target Cell Phone 4,** that is in the custody or control of Verizon Wireless, a wireless telephone service provider headquartered in Bedminster, NJ.

        e.     **(602) 727-7292, Target Cell Phone 5**, whose service provided is AT&T, a wireless telephone service provider headquartered in North Palm Beach, Florida.

2.     The Target Cell Phones.

48

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I.**     **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.     The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phones for the time period January 1, 2020, to the present:

   i.      Names (including subscriber names, usernames, and screen names);

   ii.      Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.      Local and long-distance telephone connection records;

   iv.      Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.      Length of service (including start date) and types of service utilized;

   vi.      Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii.    Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix.    All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phones for the time period January 1, 2020 to the present including:

   a.    the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

   b.    information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received) as well as per-call measurement data (also known as "real-time tool" or "RTT")].

b.    Information associated with each communication to and from the Target Cell Phones for a period of 30 days from the date of this warrant, including:

   i.    Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

2

ii.       Source and destination telephone numbers;

iii.      Date, time, and duration of communication; and

iv.      All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phones will connect at the beginning and end of each communication as well as per-call measurement data (also known as "real-time tool" or "RTT").

c.     Information about the location of the Target Cell Phones for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i.      To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of Target Cell Phone #2 on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

3

ii.     This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to be Seized by the Government

All information described above in Section I that will assist in the investigation of **Andrew MOSBY, Elijah HENRY, Shenicqua BILLINGS-TROUPE, Joseph MOSBY, Latiere MOSBY** and others regarding violations of Title 18, United States Code, Sections 371 (conspiracy); 922(a)(6) (false statement during a purchase of a firearm); 922(a)(1)(A) (engaging in firearms business without a federal firearm license); 924(a)(1)(A) (false statement during a purchase of a firearm); 924(n) (interstate travel to buy firearms to deal without a federal firearm license); and 1001 (false statements or representations to an agency of the United States) between January 1, 2020 and the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in these Warrants.

4

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by **Verizon** ,and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of **Verizon** The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.     all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Verizon and they were made by **Verizon** as a regular practice; and

b.     such records were generated by **Verizon** electronic process or system that produces an accurate result, to wit:

1.     the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of **Verizon** in a manner to ensure that they are true duplicates of the original records; and

2.     the process or system is regularly verified by **Verizon**, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____        _____
Date                                              Signature

5

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by **AT&T**, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of **AT&T** The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of **AT&T** and they were made by **AT&T** as a regular practice; and

b.      such records were generated by **AT&T** electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of **AT&T** in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by **AT&T**, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____        _____
Date                                                            Signature

6

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

IN RE APPLICATION OF THE
UNITED STATES OF AMERICA FOR                    App. No. 15269
AN ORDER AUTHORIZING THE
INSTALLATION AND USE OF PEN
REGISTER AND TRAP AND
TRACE DEVICE OR PROCESS

---

**APPLICATION FOR AN ORDER AUTHORIZING THE INSTALLATION
AND USE OF PEN REGISTERS AND TRAP AND TRACE DEVICES**

---

The United States of America, moving by and through Assistant United States Attorney Christopher Ladwig, its undersigned counsel, respectfully submits under seal this *ex parte* application for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the following cellular devices:

a.       **(470) 756-1501**, **Target Cell Phone 1,** whose service provided is AT&T, a wireless telephone service provider headquartered in North Palm Beach, Florida.

b.       **(480) 823-3716, Target Cell Phone 2,** whose service provider is AT&T, a wireless telephone service provider headquartered in North Palm Beach, Florida.

c.       **(414) 336-1740, Target Cell Phone 3,** whose service provider is Verizon Wireless, a wireless telephone service provider headquartered in Bedminster, NJ.

d.       **(480) 826-4077, Target Cell Phone 4,** whose service provider is Verizon Wireless, a wireless telephone service provider headquartered in Bedminster, NJ.

7

e.    **(602) 727-7292, Target Cell Phone 5,** whose service provided is AT&T, a wireless telephone service provider headquartered in North Palm Beach, Florida.

("the Target Cell Phones"), such information being in the custody or control of AT&T and Verizon (referred to herein and in Attachment B as the "Service Provider"). In support of this application, the United States asserts:

1.    This is an application, made under 18 U.S.C. § 3122(a)(1), for an order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and a trap and trace device.

2.    Such an application must include three elements: (1) "the identity of the attorney for the Government or the State law enforcement or investigative officer making the application"; (2) "the identity of the law enforcement agency conducting the investigation"; and (3) "a certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. § 3122(b).

3.    The undersigned applicant is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

4.    The law enforcement agency conducting the investigation is the ATF.

5.    The applicant hereby certifies that the information likely to be obtained by the requested pen-trap devices is relevant to an ongoing criminal investigation being conducted by the ATF.

6.    This Court is a "court of competent jurisdiction" under 18 U.S.C. § 3122(a)(2) because it "has jurisdiction over the offense being investigated," 18 U.S.C. § 3127(2)(A)(i).

8

**The Relevant Facts**

7.      The United States government, including ATF is investigating possible violations of Title 18, United States Code, Sections 371 (conspiracy); 922(a)(6) (false statement during a purchase of a firearm); 922(a)(1)(A) (engaging in firearms business without a federal firearm license); 924(a)(1)(A) (false statement during a purchase of a firearm); 924(n) (interstate travel to buy firearms to deal without a federal firearm license); and 1001 (false statements or representations to an agency of the United States).

8.      The conduct being investigated involves use of the Target Cell Phones. To further the investigation, investigators need to obtain the dialing, routing, addressing, and signaling information associated with communications sent to or from the Target Cell Phones.

9.      The pen-trap devices sought by this application will record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phones, including the date, time, and duration of the communication, and the following, without geographic limit:

- Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cellular device, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

- Source and destination telephone numbers and email addresses;

- All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phones will connect at the beginning and end of each communication as well as per-call measurement data (also known as "real-time tool" or "RTT").

3

**Government Requests**

10.    For the reasons stated above, the United States requests that the Court enter an Order authorizing the installation and use of pen-trap devices to record, decode, and/or capture the dialing, routing, addressing, and signaling information described above for each communication to or from the Target Cell Phones, along with the date, time, and duration of the communication, without geographic limit. The United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).

11.    The United States further requests that the Court authorize the foregoing installation and use for a period of **sixty (60) days**, pursuant to 18 U.S.C. § 3123(c)(1).

12.    The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order the Service Providers and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of this Order to furnish, upon service of the Order, information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service. Any entity providing such assistance shall be reasonably compensated by the ATF, pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of this Order.

13.    The United States further requests that the Court order the Service Providers and any other person or entity whose assistance may facilitate execution of this Order to notify the applicant and the ATF of any changes relating to the Target Cell Phones, including changes to subscriber information, and to provide prior notice to the applicant and the ATF before terminating or changing service to the Target Cell Phones.

4

14. The United States further requests that the Court order that the ATF and the applicant have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to them, for the duration of the Order.

15. The United States further requests, pursuant to 18 U.S.C. § 3123(d)(2), that the Court order the Service Providers and any other person or entity whose assistance facilitates execution of this Order, and their agents and employees, not to disclose in any manner, directly or indirectly, by any action or inaction, the existence of this application and Order, the resulting pen-trap devices, or this investigation, except as necessary to effectuate the Order, unless and until authorized by this Court.

16. The United States further requests that this application and any resulting Order be sealed until otherwise ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).

17. The foregoing is based on information provided to me in my official capacity by agents of the ATF.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 5, 2023, at Milwaukee, Wisconsin.

GREGORY J. HAANSTAD
United States Attorney

/s/Christopher Ladwig
Christopher Ladwig
Assistant United States Attorney
Eastern District of Wisconsin
517 E. Wisconsin Ave, Room 530
Milwaukee WI 53202
414-297-1700

5

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

IN RE APPLICATION OF THE
UNITED STATES OF AMERICA FOR
AN ORDER AUTHORIZING THE
INSTALLATION AND USE OF PEN
REGISTER AND TRAP AND
TRACE DEVICE OR PROCESS

App. No. 15269

---

**ORDER**

---

Assistant United States Attorney Christopher Ladwig, on behalf of the United States, has

submitted an application pursuant to 18 U.S.C. §§ 3122 and 3123, requesting that the Court issue

an Order authorizing the installation and use of pen registers and trap and trace devices ("pen-trap

devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information

associated with each communication to or from the cellular devices:

f. **(470) 756-1501**, **Target Cell Phone 1,** whose service provided is AT&T, a

wireless telephone service provider headquartered in North Palm Beach, Florida.

g. **(480) 823-3716, Target Cell Phone 2,** whose service provider is AT&T, a

wireless telephone service provider headquartered in North Palm Beach, Florida.

h. **(414) 336-1740, Target Cell Phone 3,** whose service provider is Verizon

Wireless, a wireless telephone service provider headquartered in Bedminster, NJ.

i. **(480) 826-4077, Target Cell Phone 4,** whose service provider is Verizon

Wireless, a wireless telephone service provider headquartered in Bedminster, NJ.

j.     **(602) 727-7292, Target Cell Phone 5,** whose service provided is AT&T, a wireless telephone service provider headquartered in North Palm Beach, Florida.

The Court finds that an attorney for the government has submitted the application and has certified that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation being conducted by the ATF of suspects in connection with possible violations of Title 18, United States Code, Sections 371 (conspiracy); 922(a)(6) (false statement during a purchase of a firearm); 922(a)(1)(A) (engaging in firearms business without a federal firearm license); 924(a)(1)(A) (false statement during a purchase of a firearm); 924(n) (interstate travel to buy firearms to deal without a federal firearm license); and 1001 (false statements or representations to an agency of the United States).

The Court has also issued a Search and Seizure warrant, dated today, under the same docket number, pursuant to Rule 41 of the Federal Rules of Criminal Procedure for, among other things, data about the cell towers and sectors to which the Target Cell Phones will connect at the beginning and end of each communication.

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 3123, that ATF may install and use pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phones, including the date, time, and duration of the communication, and the following, without geographic limit:

- Any unique identifiers associated with the cellular device, including Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber

2

Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI").

- Source and destination telephone numbers;
- All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phones will connect at the beginning and end of each communication as well as per-call measurement data (also known as "real-time tool" or "RTT").

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(c)(1), that the use and installation of the foregoing is authorized for **sixty (60) days** from the date of this Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Service Provider and any other person or entity providing wire or electronic communication service in the United States whose assistance may, pursuant to 18 U.S.C. § 3123(a), facilitate the execution of this Order shall, upon service of this Order, furnish information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service;

IT IS FURTHER ORDERED that the ATF reasonably compensate the Service Provider and any other person or entity whose assistance facilitates execution of this Order for reasonable expenses incurred in complying with this Order;

IT IS FURTHER ORDERED that the Service Provider and any other person or entity whose assistance may facilitate execution of this Order notify the applicant and the ATF of any changes relating to the Target Cell Phones, including changes to subscriber information, and to provide prior notice to the ATF before terminating or changing service to the Target Cell Phones;

3

IT IS FURTHER ORDERED that the ATF have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to the ATF, for the duration of the Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(d)(2), that the Service Provider and any other person or entity whose assistance facilitates execution of this Order, and their agents and employees, shall not disclose in any manner, directly or indirectly, by any action or inaction, the existence of the application and this Order, the pen-trap devices, or the investigation to any person, except as necessary to effectuate this Order, unless and until otherwise ordered by the Court; except that the Service Provider may disclose this Order to an attorney for the Service Provider for the purpose of receiving legal advice;

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).

Dated _____1/9/2023_____

_____
HONORABLE NANCY JOSEPH
United States Magistrate Judge
App. No.: 15269

4